BNDBSS

# U.S. District Court
## Southern District of Florida (Ft Lauderdale)
## CRIMINAL DOCKET FOR CASE #: 0:15−mj−06264−BSS−1
### *Internal Use Only*

Case title: USA v. Allen

Date Filed: 06/12/2015
Date Terminated: 06/17/2015

Assigned to: Magistrate Judge
Barry S. Seltzer

**Defendant (1)**

| | | |
|---|---|---|
| **Will D. Allen** | represented by | **Mariaelena Gayo−Guitian** |
| 07991−104 | | Genovese Joblove &Battista, PA |
| *YOB 1960 ENGLISH* | | National City Center |
| *TERMINATED: 06/17/2015* | | 200 East Broward Blvd. |
| | | Suite 1110 |
| | | Fort Lauderdale, FL 33301−4217 |
| | | 954−453−8000 |
| | | Fax: 954−954−8010 |
| | | Email: mguitian@gjb−law.com |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Temporary* |

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| 15:78J.F | |

**Plaintiff**

**USA**                                    represented by  **Karen Olivia–Marie Stewart**
United States Attorney's Office
500 E. Broward Boulevard
Suite 700
Fort Lauderdale, FL 33394
954–660–5798
Fax: 954–356–7336
Email: karen.o.stewart@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/12/2015 | 1 | 4 | Magistrate Removal of Complaint from Massachusetts Case number in the other District 15 MJ 7095 JCB as to Will D. Allen (1). (dd) (Entered: 06/12/2015) |
| 06/12/2015 | | | Arrest of Will D. Allen (dd) (Entered: 06/12/2015) |
| 06/12/2015 | 2 | 18 | Report Commencing Criminal Action as to Will D. Allen – YOB: **/**/1960 Prisoner #: 07991–104 (dd) (Entered: 06/12/2015) |
| 06/12/2015 | 3 | 19 | ORDER UNSEALING REMOVAL CASE as to Will D. Allen re 1 Magistrate Removal In Signed by Magistrate Judge Barry S. Seltzer on 6/12/2015. (dd) (Entered: 06/12/2015) |
| 06/12/2015 | 4 | 20 | NOTICE OF TEMPORARY ATTORNEY APPEARANCE: Mariaelena Gayo–Guitian appearing for Will D. Allen (dd) (Entered: 06/12/2015) |
| 06/12/2015 | 5 | 21 | Order on Initial Appearance as to Will D. Allen for proceeding held on 6/12/2015. Defendant waives reoval. Bond set: Will D. Allen (1) $200,000–10% Cash. Signed by Magistrate Judge Barry S. Seltzer on 6/12/2015. (dd) (Entered: 06/12/2015) |
| 06/12/2015 | 6 | 23 | WAIVER of Rule 5(c)(3)/Rule 40 Hearing by Will D. Allen (dd) (Entered: 06/12/2015) |
| 06/12/2015 | 7 | 24 | Minute Entry for proceedings held before Magistrate Judge Barry S. Seltzer: Initial Appearance and Bond Hearing as to Will D. Allen held on 6/12/2015. Bond set: Will D. Allen (1) $200,000–10% Cash. Defendant released and will post money by 6/17/15. Defendant waived removal. (Digital 11:20:04) (dd) (Entered: 06/12/2015) |
| 06/17/2015 | 8 | 25 | $200,000 10% PSB Bond Entered as to Will D. Allen Receipt # FLS 000006823. Approved by Magistrate Judge Barry S. Seltzer. *Please see bond image for conditions of release.* (at) (Entered: 06/17/2015) |
| 06/17/2015 | 9 | 30 | ORDER OF REMOVAL ISSUED to District of Massachusetts as to Will D. Allen Closing Case for Defendant. (Signed by Magistrate Judge Barry S. Seltzer on 6/12/2015). (at)<br><br>**NOTICE: If there are sealed documents in this case, they may be unsealed after 1 year or as directed by Court Order, unless they have been designated to be permanently sealed. See Local Rule 5.4 and** |

| | | | **Administrative Order 2014–69.** (Entered: 06/17/2015) |

AUSA: KAREN STEWART

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Massachusetts

| | | |
|---|---|---|
| United States of America | ) | Case No.  15 m s 709S JCB |
| v. | ) | |
| Will D. Allen and Susan C. Daub | ) | 15 - 6264 - BSS |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___June 2012 through the present___ in the county of ___Essex and elsewhere___ in the

_____ District of ___Massachusetts___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 15 USC §§ 78j(b) and 78(ff) | Securities fraud |

This criminal complaint is based on these facts:

See attached affidavit

☐ Continued on the attached sheet.

*Sheila R. Magoon*
*Complainant's signature*

Sheila R. Magoon, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___06/10/2015___

*Judge's signature*

City and state: ___Boston, Massachusetts___

Hon. Jennifer C. Boal, U.S. Magistrate Judge
*Printed name and title*

4

### Affidavit of Sheila R. Magoon

I, Sheila R. Magoon, hereby declare as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation and have been employed as such since September 2003. I have been assigned to the Economic Crimes Squad in the Boston Field Office since 2004. I am also a certified public accountant.

2.      I make this affidavit in support of a criminal complaint charging WILL D. ALLEN and SUSAN C. DAUB with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78(ff).

3.      The facts in this affidavit come from my personal involvement in this investigation, interviews with witnesses, and my review of documents, records, and information provided by others, including the Securities and Exchange Commission. In submitting this affidavit, I have not included every fact known to me about this investigation. Rather, I have included only those facts that I believe are sufficient to establish probable cause.

### Background

4.      Capital Financial Partners, LLC ("CFP") is a limited liability company registered in Massachusetts on June 7, 2012. According to its registration documents, CFP's address is 470 Atlantic Ave., 7th Floor, Boston, MA 02210. Its registered agents are ALLEN and DAUB.

5.      As recently as March 2015, CFP's webpage, www.capfinp.com, advertised "private lending to unique individuals" and featured photos of high-end real estate and luxury goods (including what appeared to be an Aston Martin Vanquish and a Gulfstream G650 private jet). The webpage indicated that the firm "specializes in issuing short-term loans to professional athletes." The page explained that: "[i]n many cases, athletes' contracts do not allow them to access their guaranteed money during the off season or early in the season when they may need a significant sum to purchase a house or car, pay bills or meet a financial demand. By pooling the

resources of a network of investors, CFP gives athletes access to money when they need it while providing investors with solid, short-term returns on investment." CFP's webpage is no longer publicly available.

6.     According to the CFP website, CFP's average loan to an athlete was for $600,000 "on a 12 month term at very favorable rates for the industry." The page indicated that CFP's minimum loan was $75,000. There was no stated maximum. The webpage noted that loans "are only limited by there [sic] purpose and your ability to repay."

7.     Although the CFP webpage purported to link to online loan request forms for athletes, entertainers, and real estate developers, each of the page's links directed visitors to the same page, which contained a loan request form for athletes. That form called for the player's name and e-mail address, and asked the following questions:

- Is the player under an existing contract?
- What sport does the borrower play?
- How much is next season's salary?
- How much is the player looking to borrow?

8.     At the bottom, the webpage listed an address for "CFP Southeast" in Coral Springs, Florida and an address for "CFP Northeast" in Boston. Both locations listed the same contact phone number, which had a Boston-area exchange (617).

## WILL D. ALLEN and SUSAN C. DAUB

9.     WILL D. ALLEN is a former professional football player who played in the National Football League from 2001 through 2011. In 2012, he signed a one-year contract with the New England Patriots, but was put on the injured reserve list in August of that year, and did not play during the season. As recently as February 6, 2015, in a bankruptcy court filing I believe to have been signed by ALLEN, ALLEN identified himself as Managing Partner of CFP. ALLEN lives in Davie, Florida.

2

10. SUSAN C. DAUB is a former employee of Regions Bank who lives in Coral Springs, Florida. According to the public portions of DAUB's LinkedIn profile, DAUB works for CFP in the Miami/Fort Lauderdale area. DAUB's profile describes CFP as offering financial services and says that it "specializes in lending to Professional Athletes." According to the profile, DAUB has been the managing partner of CFP since June 2012. The profile indicates that she performs work for CFP in both Florida and Massachusetts.

11. DAUB's LinkedIn profile indicates that, before joining CFP, she was the president of SCD Global Group from February 2010 to June 2012, where, she "[s]pecialize[d] in high net worth Domestic and International Life Insurance." The profile indicates that, before SCD Global, DAUB was a Vice President and Private Banker at Regions Bank from 2007 to 2010. DAUB's profile lists banking, loans, and private lending among her skills.

12. Before being registered as an LLC in Massachusetts, CFP was registered in Florida. ALLEN and DAUB were its registered agents. The Florida entity was dissolved on August 20, 2012.

13. ALLEN and DAUB are also the registered agents for several CFP-related companies registered in Florida and Massachusetts. Those companies include Capital Financial Partners Enterprises, LLC (registered Dec. 10, 2013 in Florida), Capital Financial Partners Holdings, LLC (registered December 17, 2013 in Florida), and Capital Financial Holdings, LLC (registered April 2, 2014 in Massachusetts).

14. ALLEN and DAUB were or are both signatories to all of the CFP bank accounts of which I am aware, including a CFP account at Bank of America (xxxx xxxx 8156) (the "8156 account"). CFP used the 8156 account to conduct most of the company's business.

3

### The Fraud Scheme

15.     ALLEN and DAUB, raised money from investors by telling them that their money would be loaned to athletes at a high interest rate, in most instances after being pooled with the money of other investors. Although that sometimes occurred, ALLEN and DAUB also used investor money for their personal benefit and to pay other investors, falsely telling the recipients of the funds that the money represented returns on their investments. As part of the scheme, ALLEN and DAUB sometimes oversubscribed loans, falsely telling investors that loans were larger than they actually were and collecting more money from investors than was actually being loaned to an athlete. In other instances, ALLEN and DAUB collected money for loans that CFP never made. In total, ALLEN and DAUB collected from investors millions of dollars more than they loaned to athletes, and then spent much of that money on themselves and other business ventures.

### ALLEN and DAUB's Collection of Money for Non-Existent Loans

16.     On multiple occasions, ALLEN and DAUB solicited and collected money from investors for loans that CFP never issued. Some of those transactions are described below.

#### *Athlete 1*

17.     Two of the fraudulent loans were ostensibly issued to Athlete 1, a professional baseball player. The first of these was funded in August 2014 by Investor 1, who contributed $300,000, the full value of the supposed loan. Investor 1, a Massachusetts resident, gave the money to CFP in reliance on representations made to him by DAUB that his money would be used to fund a loan to Athlete 1, who would repay it with interest. In the months after giving CFP the money, Investor 1 asked DAUB for copies of the loan agreement and other documentation signed by Athlete 1. On October 1, 2014, DAUB sent Investor 1 an e-mail to which she attached what she called "the signed note from [Athlete 1]." The attachment contained what appeared to

4

be a loan agreement and promissory note between Athlete 1 and CFP for a $300,000 loan to Athlete 1. Both documents appeared to have been signed by Athlete 1, whose signature was notarized. One of the documents also appears to have been signed by DAUB.

18.    The signatures of Athlete 1 on the loan agreement and the promissory note were forged. Athlete 1 did not sign the documents or receive a loan from CFP. Instead of being used to fund a loan to Athlete 1, the money invested by Investor 1 was used, in part, to fund a separate loan to a different professional baseball player, which loan was supposed to have been funded by other investors. The remainder of Investor 1's money was used, among other things, to make payments to existing investors, to make transfers of approximately $60,000 to Insurance Depot of America (a Florida company registered to ALLEN), and to make transfers directly to ALLEN, who received a combined $46,000 between August 29 and September 3, 2014. In the days following the transfer of the money to his personal account, ALLEN made thousands of dollars in payments for apparently personal expenditures, including payments to American Express and to Nordstrom.

19.    To keep Investor 1 from discovering their fraud, ALLEN and DAUB made payments to him roughly in accordance with the schedule set forth in the Participation Agreement between Investor 1 and CFP, creating the false impression that Athlete 1 was repaying the purported loan on schedule. The money used to make the repayments, in fact, came, at least in part, from money provided to CFP by new investors.

20.    In November 2014, DAUB solicited $300,000 from Investor 2, another Massachusetts resident, for a second purported loan to Athlete 1. As with Investor 1, Investor 2 gave the money to CFP in reliance on representations made to her by DAUB that her money would be used to fund a loan to Athlete 1, who would repay it with interest. On November 10, 2014, Investor 2 wired $300,000 to CFP's 8156 account.

5

21.     CFP did not make a loan to Athlete 1. Instead, CFP used part of Investor 2's money to make a loan to a professional basketball player, which loan was supposed to be have been funded by other investors. The remainder of Investor 2's money was used, among other things, to fund a $7,000 check to DAUB's son and to make a payment of $5,426 to the Internal Revenue Service.

*Athlete 2*

22.     In November 2014, ALLEN and DAUB collected $100,000 for a loan that was ostensibly to be issued to Athlete 2, a professional baseball player. On or about November 14, 2014, Investor 3, a Massachusetts resident, wired $100,000 to the 8156 account to fund the purported loan in reliance on representations made to him by DAUB that his money would be used to fund a loan to Athlete 2, who would repay it with interest.

23.     ALLEN and DAUB did not make a $100,000 loan to Athlete 2. Instead, they used Investor 3's money for other purposes.

24.     To keep Investor 3 from discovering their fraud, ALLEN and DAUB made payments to him in accordance with the schedule set forth in the Participation Agreement between Investor 3 and CFP, creating the false impression that Athlete 2 was repaying his purported loan on schedule. On February 25, 2015, for instance, ALLEN sent Investor 3 an e-mail, copying DAUB, in which he said, "[Investor 3], An ACH payment of $47,384.12 was sent out today. This payment is for the following loans: . . . [Athlete 2]: $750." CFP's bank records show that, on February 24, 2015, CFP wired that amount out of the 8156 account.

## ALLEN and DAUB's Collection of Money for Oversubscribed Loans

25.     In addition to collecting money for loans that were never issued, ALLEN and DAUB also collected more money than was necessary to make some of the loans that CFP did issue. To disguise their over-collection, ALLEN and DAUB sent CFP investors documents

6

showing loan values that were higher than the values on the documents signed by the borrower athletes. Some of those transactions are described below.

*Athlete 3*

26.     Between April and May of 2014, ALLEN and DAUB collected approximately $3.5 million for an April 2014 loan to a professional hockey player, Athlete 3, to whom CFP had made several loans in the past. ALLEN and DAUB provided at least some of those investors with what purported to be signed loan agreements between Athlete 3 and Capital Financial Holdings, signed promissory notes, and signed direct deposit agreements, all of which showed a face value for the loan of $5.65 million. In fact, the face value of the April 2014 loan was only $3.4 million, and only $500,000 of that was new money for Athlete 3. (The remainder represented a refinancing of Athlete 3's existing loans with CFP.)

27.     Accordingly, ALLEN and DAUB collected approximately $3 million more than they loaned to Athlete 3 in April 2014. The excess money collected in his name was spent, among other ways, making over $2 million in payments to past investors; funding loans to other athletes; and making transfers of approximately $350,000 to ALLEN and approximately $165,000 to Encore Capital Properties, LLC, a Florida company registered to ALLEN, DAUB, and DAUB's son. On May 6, 2015—the same day on which $300,000 was transferred from CFP's 8156 account to ALLEN's personal bank account—ALLEN wired $300,000 to a company called Advocates for America, LLC with the memo "My Advocate Investment."

28.     ALLEN and DAUB lulled investors in the oversubscribed loan to Athlete 3 by concealing from them his non-payment on the money he had, in fact, borrowed, which they accomplished, in part, by making timely payments to investors using money provided by new investors. On December 5, 2014, for instance, CFP wired approximately $16,698.42 to four investors in Athlete 3's loan, despite the fact that Athlete 3 had not made any payments himself.

7

As described further in Paragraph 38, below, those payments would not have been possible without an investment of $100,000 by another CFP investor earlier that day.

29.     ALLEN and DAUB also lulled investors by falsely telling them that Athlete 3 was making payments, and that his loan was performing as expected. On November 21, 2014, DAUB sent an e-mail to investors with the subject, "[Athlete 3] loan." The e-mail was signed "Will and Sue." In it, ALLEN and DAUB falsely told investors, "Our loan with [Athlete 3] is performing as expected. All payments have been made in full and on time." In fact, as both ALLEN and DAUB knew, Athlete 3 had not made all payments on time and in full, and instead had declared bankruptcy in early October 2014. In their e-mail, ALLEN and DAUB also falsely told investors that ALLEN and DAUB had "been in contact with [Athlete 3's] financial advisors and attorney. They have assured us that we have nothing to worry about. We are not considered one of his bad creditors and we will receive all payments timely and will most likely be paid off early." ALLEN and DAUB further stated, "We want to assure you that your investment is safe and that you will be receiving your payments on time."

30.     On February 9, 2015, in a filing that appears to have been signed by ALLEN, Capital Financial Holdings, LLC submitted a claim for $3,429,750 as a creditor in Athlete 3's bankruptcy action. In the attachment to Capital Financial Holdings's proof of claim, it represented that, in April of 2014, it had made a loan of $3.4 million—not $5.65 million—to Athlete 3. Also included in the attachments to the proof of claim was a copy of a loan agreement for $3.4 million between Athlete 3 and Capital Financial Holdings. The agreement appears to have been signed by Athlete 3 and, on behalf of Capital Financial Holdings, by ALLEN, whose title is given as "Managing Partner." In copies of nearly identical loan agreements given to investors that bore the loan amount $5.65 million, the agreement appears to have been signed by

8

Athlete 3 and by ALLEN, whose title is given as "Managing Member" of Capital Financial Holdings.

*Athlete 4*

31.    In or about March of 2015, DAUB contacted several CFP investors about a purported $2.5 million loan to Athlete 4, an NFL football player. In reliance on DAUB's representations, the investors gave CFP approximately $2.5 million to fund the loan.

32.    CFP's actual loan to Athlete 4 was for only $500,000. Athlete 4 never entered into a loan agreement with CFP for $2.5 million, or for any amount greater than $500,000.

33.    The money raised to fund the supposed loan to Athlete 4 was, in fact, used primarily for other purposes, including to make approximately $736,000 worth of payments to investors on existing loans. CFP also transferred $10,000 of investor money raised for the Athlete 4 loan to Insurance Depot of America, and transferred $170,000 of it to ALLEN's personal bank account.

### Use of Investor Money to Pay Other Investors

34.    As noted, CFP frequently made payments to existing investors using money from new investments. Among the occasions on which it did this were the following:

*September 2014*

35.    On September 23, 2014, the balance in the 8156 account was approximately $7,429.39. On that day, the account received two $100,000 deposits, one from Investor 4 and one from Investor 5.

36.    On the same day that CFP received the combined $200,000 of investments, it made approximately $154,192.56 in payments out of the 8156 account. Of that, approximately $84,885.42 was paid to CFP investors (including a $12,031.25 payment back to Investor 5) and characterized in memos on the wires as "Investor Payment[s]." Given the balance of $7,429.39 at

9

the beginning of the day, these investor payments could not have been made without the influx of new investments.

*October 2014*

37. CFP followed the same pattern in October 2014. On October 27, 2014, the 8156 account contained approximately $6,714.63. The next day, October 28, the account received three investments totaling $450,000. The same day, CFP wired $140,000 to another investor with the memo "Investor Payment."

*December 2014*

38. On December 4, 2014, the balance in the 8156 account was approximately $22,086.32. The next day, on December 5, CFP received another investment of $100,000 from Investor 5. The memo on the wire transfer said, "Attn: Susan Daub." Over the course of December 5, CFP paid out approximately $120,171.86 to twelve investors, payments it could not have afforded without the new investment by Investor 5.

39. On December 17, 2014, the balance in the 8156 account was approximately $15.22. The next day, it received another $100,000 investment from Investor 5. On the same day as the new investment, CFP paid over $3,000 to a different investor, describing the payment as an athlete loan payment. That payment would not have been possible without the December 18 investment by Investor 5.

*January 2015*

40. On January 5, 2015, the balance in the 8156 account was approximately $3,054.40. The next day, it received a $100,000 investment from Investor 6. Over that day and the next, January 7, 2015, CFP paid approximately $62,873.40 to investors using five wire transfers. The memos associated with some of those transfers made reference to "Loan

10

Repayment." The investor payments would not have been possible without the January 6, 2015 investment by Investor 6.

*March 2015*

41.    At the beginning of March 2015, the balance in CFP's escrow account was approximately $141,528.84. During that month, the account received just under $39,000 in loan repayments from athletes, but it made approximately $1,592,395 in payments to investors. Those payments were funded overwhelmingly by the approximately $4.2 million raised from investors during the same month, of which $2.5 million was raised to fund the supposed loan to Athlete 4.

### Use of Investor Money for Personal Expenses

42.    In addition to using new investor money to pay back old investors, ALLEN and DAUB sometimes used investor money to pay themselves and their personal expenses. Between June of 2012 and March of 2014, the 8156 account shows the following payments, among others:

a.    Approximately $4.1 million (net) to ALLEN;

b.    Approximately $239,000 (net) to DAUB, plus additional amounts classified as payroll;

c.    Approximately $51,289 to DAUB's son;

d.    $20,000 to Aria Resort & Casino in Las Vegas, where ALLEN has an account;

e.    Approximately $41,080 to Seminole Hard Rock Casino in Hollywood, Florida, where ALLEN has an account;

f.    Approximately $16,500 to Nordstrom;

g.    Over $3,800 in iTunes purchases;

h.    Over $2,000 to Publix, a supermarket chain;

11

i.  Approximately $116,964 in debits less than $1,000 each to companies including, but not limited to, sandwich shops, fast food restaurants, a cigar store, a car wash, a laundromat, LA Fitness (a commercial gym), Starbucks Coffee, Primo Liquors, iTunes, Petsmart, Waffle House, Macy's, Dunkin Donuts, the YMCA, Publix, Neiman Marcus, and Barnes & Noble.

## Conclusion

43.  Based on my knowledge, training, and experience and the facts set forth in this affidavit, I have probable cause to believe, and I do believe, that, in or about and between June 2012 and the present, WILL D. ALLEN and SUSAN C. DAUB committed securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

Sworn to under the pains and penalties of perjury.

Sheila R. Magoon, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me June 10, 2013.

The Honorable Jennifer C. Boal
United States Magistrate Judge

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| United States of America | ) | |
| v. | ) | Case No. 15 MJ 7095 SCB |
| Will D. Allen and Susan C. Daub | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:  Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Will D. Allen                                                      ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☑ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:
   Securities fraud, in violation of 15 USC §§ 78j(b) and 78(ff)

Date:  06/10/2015

*Issuing officer's signature*

Steve York Deputy Clerk

City and state:  Boston, Massachusetts

Hon. Jennifer C. Boal, U.S. Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____    _____ |
| *Arresting officer's signature* |
| _____ |
| *Printed name and title* |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

15-6264-BSS

REPORT COMMENCING CRIMINAL ACTION

UNITED STATES OF AMERICA

CASE # 15 MJ 7095 JCB

VS Allen, Will

PRISONER # 07991-104

*******************************************************************

TO:  CLERK'S OFFICE, UNITED STATES DISTRICT COURT:    (CIRCLE ONE)

MIAMI    FT. LAUDERDALE    WEST PALM BEACH    FT. PIERCE
*******************************************************************

*ALL ITEMS ARE TO BE COMPLETED - INFORMATION NOT APPLICABLE OR UNKNOWN TO BE INDICATED BY "N/A":*

1) DATE AND TIME OF ARREST: 6/12/15 approx. 8:30 am

2) LANGUAGE(S) SPOKEN: English

3) OFFENSE (S) CHARGED: 15 USC 78(b) 78(ff)

4) U.S. CITIZEN  [X] YES    [ ] NO    [ ] UNKNOWN

5) DATE OF BIRTH: 4/8/60

6) TYPE OF CHARGING DOCUMENT:    (CHECK ONE)
[ ] INDICTMENT
[X] COMPLAINT TO BE FILED/ALREADY FILED
[ ] BENCH WARRANT FOR FAILURE TO APPEAR
[ ] PROBATION VIOLATION WARRANT
[ ] PAROLE VIOLATION WARRANT

ORIGINATING DISTRICT: Massachusetts

COPY OF WARRANT LEFT WITH BOOKING OFFICER [ ] YES    [ ] NO

7) AMOUNT OF BOND: _____    WHO SET BOND: _____

8) ARRESTING/PROCESSING AGENT: Sarah Gioielli    DATE: 6/12/15

9) AGENCY: FBI    PHONE: 954-658-0287

18

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA
         Plaintiff

vs

                               Case No:15-6264-SELTER

WILL D. ALLEN
         Defendant

## O R D E R

THIS CAUSE is before the Court for the initial appearance of the above-named

defendant(s) on a SEALED COMPLAINT filed in the District of Massachusetts.


UPON ORAL motion of the government in open court that the Criminal Complaint be

unsealed as to all the defendants, it is hereby ORDERED AND ADJUDGED that the Sealed

Complaint be unsealed as to all parties in this case.

DONE AND ORDERED at Fort Lauderdale, Florida this 12th day of June, 2015.


                                      BARRY S. SELTZER
                                      UNITED STATES MAGISTRATE JUDGE


cc: All Counsel of Record

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: *15-0264-BSS*

UNITED STATES OF AMERICA,
Plaintiff,

v.

**NOTICE OF TEMPORARY
APPEARANCE AS COUNSEL**

*Will D. Allen*
Defendant.

_____/

COMES NOW *Mariaelena Gayo-Guitian* and

files this temporary appearance as counsel for the above named defendant(s) at initial appearance.

This appearance is made with the **understanding** that the undersigned counsel will fulfill any

**obligations imposed** by the Court such as **preparing and filing documents** necessary to

collateralize any personal surety bond which may be set.

Counsel's Name (**Printed**): *Mariaelena Gayo-Guitian Esq.*

Counsel's Signature: _____

Address (include City/State/Zip Code):
*Genovese, Joblove & Battista, P.A.*
*200 East Broward Blvd. Suite 1110*
*Fort Lauderdale, Florida 33301*

Telephone: *954-453-8035*     Florida Bar Number: *813818*

Date: *6/12/2015*

20

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-6264-SELTZER

UNITED STATES OF AMERICA

        Plaintiff,

vs

WILL D. ALLEN,
        Defendant.

**ORDER ON INITIAL APPEARANCE**
**Language: English**

AUSA: (K. Stewart Duty)

_____

The above-named defendant having been arrested on **6/12/15** and having appeared before the court for initial appearance on **6/12/15** and proceedings having been held in accordance with **F.R.C.P. 5 or 40(a)**, it is thereupon

**ORDERED** as follows:

1. _MARHA ELENA GAYO-GUTIAN_

appeared as permanent/temporary counsel of record.
Address:_____
Zip Code: _____ Telephone: _____

2. _____
appointed as permanent counsel of record.
    Address: _____
Zip Code: _____ Telephone: _____

3. **The defendant shall attempt to retain counsel and shall appear before the court at** _____ on _____ **before Judge** _Duty_

4. **Arraignment**/Preliminary/Removal/Identity hearing is set for_____ **Before** **Duty Magistrate Judge** _WAIVED REMOVAL._

5. The defendant is held in temporary pretrial detention pursuant to 18 U.S.C. Section 3142 (d) or (f) because_____ **A Detention/Bond hearing**, pursuant to 18 U.S.C. Section 3142(f), is set for _____.

6. The defendant shall be released from custody upon the posting of the following type of appearance bond, pursuant to 18 U.S.C. 3142: _$200,000 10%_ This bond shall contain the standard conditions of bond printed in the bond form of this Court and, in addition, the defendant must comply with the special conditions checked below: _DEFT TO POST MONEY BY 6-17-15_

____a. Surrender all passports and travel documents to the Pretrial Services Office and do not obtain passport.

____b. Report to Pretrial Services as follows:_____as directed;____times a week /month by phone, ____times a week/month__in person; other_____

____c. Submit to random urine testing by Pretrial Services for the use of non-physician-prescribed substances prohibited by law.

____d. Maintain or actively seek full time gainful employment.

____e. Maintain or begin an educational program.

____f. Avoid all contact with victims of or witnesses to the crimes charged.

____g. Refrain from possessing a firearm, destructive device or other dangerous weapon.

____h. Comply with the following curfew:_____

_____i. Avoid all commercial transportation facilities; no airports, no marinas, no bus terminals.


_____j.  Comply   with   the   following   additional   special   conditions   of   this   bond:

bond was set: At Arrest _____
               On Warrant _____
               After Hearing _____

If   bond is changed from that set in another District, the reason pursuant to Rule 40(f) is_____ _____
_____ If this space is checked, an evidentiary hearing pursuant to United States v. Nebbia, 357, F.2d 303 (2
Cir. 1966) shall be held prior to the posting of the bond. Such hearing shall be scheduled promptly upon notification
to the court that the defendant is ready to post bond.

7. The defendant has been advised by the court that if he or she is released on bond pursuant to the   conditions set
forth herein or those later ordered by the court, the defendant is subject to arrest and   revocation of release and to
various civil and criminal sanctions for any violation of those conditions.   These various sanctions and penalties
are set forth more fully in the Appearance Bond itself.

8. The defendant is committed to the custody of the United States Marshal until an appearance bond has been
executed in accordance with this or subsequent court order.

**DONE AND ORDERED**   at Fort Lauderdale, Florida this 12th day of June, 2015.



BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

cc: Assistant U.S. Attorney
      Defendant
      Counsel
      Copy for Judge
      Pretrial Services/Probation

# UNITED STATES DISTRICT COURT
## FOR THE

### SOUTHERN DISTRICT OF FLORIDA

Case No: 15-6264-SELTZER
Your Case No: 15-MJ-7095-JCB

**United States of America**

vs

### WAIVER OF REMOVAL HEARING

**Will D. Allen,**

**I** , **Will D. Allen** charged in a proceeding on a **Criminal Complaint filed in the District of Massachusetts charged with 15:USC 78j(b) and 78 (ff) Securities Fraud and** having been arrested in the **Southern District of Florida (Fort Lauderdale)** and taken before **United States Magistrate Judge Barry S. Seltzer**, for that district, who informed me of the charge and of my right to retain counsel or request the assignment of counsel if I am unable to retain counsel, and to have a removal hearing or execute a waiver thereof, do hereby waive a hearing before the aforementioned Magistrate Judge and consent to the issuance of a Warrant for my Removal to the **District of Massachusetts** where the aforesaid charge is pending against me.

June 12th, 2015

_____
Signature of defendant

....................................................
Barry S. Seltzer
United States Magistrate Judge

cc: All Counsel

UNITED STATES DISTRICT COURT FOR SOUTHERN DISTRICT OF FLORIDA **COURT MINUTES**

U.S. MAGISTRATE JUDGE BARRY S. SELTZER - FORT LAUDERDALE, FLORIDA ROOM 110

DEFT:  WILL. D. ALLEN (J)#07991-104          CASE NO:  15-6264-SELTZER

AUSA:  (K. STEWART DUTY)                     ATTY:  MARIA ELENA GAYO-GUITIAN

USPO:                                        VIOL:
                                             15:USC 78

PROCEEDING:  INITIAL APPEARANCE ON REMOVAL   RECOMMENDED BOND:
             FROM MASSACHUSETTS DISTRICT

BOND/PTD  HEARING HELD - yes / no            COUNSEL APPOINTED:

BOND SET @:  **200,000 10% CASH**            To be cosigned by:

☐  All standard conditions                   **DEFENDANT PRESENT IN COURT WITH COUNSEL**

☐  Do not encumber  property.                **ATTORNEY GUITIAN. GOVERNMENT MOVES TO UNSEAL**

☑  Surrender and / or do not obtain passports / travel documents.   **CRIMINAL COMPLAINT. ORDER SIGNED.**

☑  Rpt to PTS as directed /  or_ x's a week/month by phone; _   **ADVISED OF CHARGES. AUSA: BRIAN PEREZ-DAPLE**
   x's a week/month in person.

☑  Random  urine testing by Pretrial Services. _____   **FROM MASSACHUSETTS APPEARED TELEPHONICALLY**
   Treatment as deemed necessary.

☑  Maintain or seek full - time employment.   **COURT WILL RECONVENE AT 2:30 PM**

☑  No contact with victims / witnesses.       **COURT WILL ACCEPT BOND OF $200,000 10%**

☑  No firearms.                               **DEFENDANT WAS RELEASED, WILL DEPOSIT MONEY**

☐  Curfew/Electronic Monitoring:              **BY 6/17/2015. WAIVED REMOVAL AND SIGNED WAIVER**

☑  Travel extended to: SDIFL & MASS
   ANY INTERMEDIATE DISTRICTS              **TO APPEAR BEFORE MAGISTRATE JUDGE JENNIFER**
                                          **BOAL ON TUESDAY JULY 7 2015 AT NOON IN BOSTON MA**

☑  Other: ABIDE TO All COURT ORDERS IN SEC CASE,

| NEXT COURT APPEARANCE: | DATE: | TIME: | JUDGE: | PLACE: |
|---|---|---|---|---|
| REPORT  RE COUNSEL: | | | | |
| **PTD/BOND** HEARING: | | | | |
| PRELIM/**ARRAIGN** OR **REMOVAL**: | | | | |
| STATUS CONFERENCE: | | | | |

DATE:  **6/12/2015**   TIME:  **11:00 AM**   FTL/TAPE/#        Begin
                                            BSS-
                                                             DAR:

[ 1 HOUR AND 30 MINS ]                  11:20:04 RECALLED 14:36-25-15:27:23

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### CASE NO: 15-6264-SELTZER

JAIL#

UNITED STATES OF AMERICA
        Plaintiff,

    vs.

WILL D. ALLEN,

        Defendant,

_____

    I, WILL D. ALLEN and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ *200,000 10%*

## STANDARD CONDITIONS OF BOND

The conditions of this bond are that the defendant:

    1.  Shall appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the court shall order otherwise.

    2.  May not at any time, for any reason whatever, leave the Southern District of Florida or other District to which the case may be removed or transferred after he or she has appeared in such District pursuant to the conditions of this bond, without first obtaining written permission from the court, except that a defendant ordered removed or transferred to another district may travel to that district as required for court appearances and trial preparation upon written notice to the Clerk of this court or the court to which the case has been removed or transferred. The Southern District of Florida consists of the following counties: **Monroe, Miami-Dade, Broward, Palm Beach, Martin, St. Lucie, Indian River, Okeechobee, and Highlands.**

    3.  May not change his or her present address as recorded on this bond without prior permission in writing from the court.

    4.  Is required to appear in court at all times as required by notice given by the court or its clerk to the address on this bond or in open court or to the address as changed by permission from the court. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the court has entered an order of dismissal.

    5. The defendant must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135(a).

    6.  Shall not commit any act in violation of state or federal laws.

**PAGE TWO**

**DEFENDANT: W. ALLEN**

**CASE NUMBER: 15-6264-BSS**

## SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

✓ a. Surrender all passports and travel documents, if any, to the Pretrial Services Office and not obtain any travel documents during the pendency of the case;

✓ b. Report to Pretrial Services as follows: ( ) *as directed or* _____ *time(s) a week in person and* _____ *time(s) a week by telephone*;

✓ c. Submit to substance abuse testing and/or treatment;

✓ d. Refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802), without a prescription by a licensed medical practitioner;

_____ e. Participate in mental health assessment and/or treatment;

_____ f. Participate and undergo a sex offense specific evaluation and treatment;

✓ g. Maintain or actively seek full-time employment;

_____ h. Maintain or begin an educational program;

✓ i. Avoid all contact with victims of or witnesses to the crimes charged, except through counsel;

✓ j. Refrain from possessing a firearm, destructive device or other dangerous weapons;

_____ k. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any real property they own, until the bond is discharged, or otherwise modified by the Court;

_____ l. May not visit commercial transportation establishment: *airports, seaport/marinas, commercial bus terminals, train stations, etc.*;

_____ m. No access to the internet via any type of connectivity device (*i.e. computers, pda's, cellular phones, tv's*), and follow instructions as outlined in the agreement waiver provided to you by Pretrial Services;

_____ n. **HOME CONFINEMENT PROGRAM** The defendant shall participate in one of the following home confinement program components and abide by all the requirements of the program which include:

    _____ **Electronic Monitoring** or other location verification system, paid for by the defendant *based upon his/her ability to pay* ( ) or **paid for by Pretrial Services** ( ).

    _____ **Electronic Monitoring** with Active Global Positioning System (GPS) tracking.

    _____ **Curfew:** You are restricted to your residence every day from _____ to _____, or as directed by the Court.

    _____ **Home Detention:** You are restricted to your residence at all times except for: **( ) medical needs or treatment, ( ) court appearances, ( ) attorney visits or court ordered obligations, and ( )other** _____.

_____ o. **HALFWAY HOUSE PLACEMENT** The defendant shall reside at a halfway house or community corrections center and abide by all the rules and regulations of the program. You are restricted to the halfway house at all times except for: **( ) employment; ( ) education; ( ) religious services; ( ) medical, substance abuse, or mental health treatment; ( ) attorney visits; ( ) court appearances; ( ) court ordered obligations; ( ) reporting to Pretrial Services; and ( ) other** _____

✓ p. May travel to and from: SD/FL & MASSACHUSETTS, ANY INTERMEDIATE DIST., and must notify Pretrial Services of travel plans before leaving and upon return.

✓ q. Comply with the following additional conditions of bond CONTINUE TO RESIDE AT CURRENT ADDRESS. ABIDE TO ALL COURT ORDERS (ALLOWED TO TRAVEL TO OHIO FOR MEDIATION) TRANSFER GUNS OUT HIS POSSESSION BY 6-17-15

DEFENDANT: W. ALLEN
CASE NUMBER: 15-6264-BSS

### PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 U.S.C. § 3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. § 401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. § 1503 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. § 1510 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. § 1512 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. § 1513 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. § 3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

> (1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;
> (2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;
> (3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;
> (4) a misdemeanor, the defendant shall be fined not more that $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

**PAGE FOUR**

DEFENDANT: W. ALLEN
CASE NUMBER: 15-6264-BSS

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of four pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

## DEFENDANT

Signed this Friday, June 12, 2015, at Fort Lauderdale, Florida
Signed and acknowledged before me:

DEFENDANT:(Signature) _____     Ft. Lauderdale, FL
                                                   City, State

## CORPORATE SURETY

Signed this _____ day of _____, 2015 at Fort Lauderdale, Florida
SURETY:_____     AGENT:(Signature) _____
                                            PRINT NAME: _____
_____
City, State

## INDIVIDUAL SURETIES

| | |
|---|---|
| Signed this 17 day of June, 2015 at Fort Lauderdale, FL | Signed this ____ day of_____, 2015 at Fort Lauderdale, FL |
| SURETY:(Signature) _____ | SURETY:(Signature)_____ |
| PRINT NAME: VERNON CAREY. | PRINT NAME:_____ |
| RELATIONSHIP TO DEFT: FRIEND | RELATIONSHIP TO DEFT:_____ |
| Southwest Ranches  Fl | |
| City, State | City, State |
| Signed this ____day of_____, 2015 at Fort Lauderdale, FL | Signed this ____day of_____, 2015 at Fort Lauderdale, FL |
| SURETY:(Signature)_____ | SURETY:(Signature)_____ |
| PRINT NAME:_____ | PRINT NAME:_____ |
| RELATIONSHIP TO DEFT:_____ | RELATIONSHIP TO DEFT:_____ |
| City, State | City, State |

## APPROVAL BY COURT

Date: June 12, 2015 _____

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

```
Court Name: SOUTHERN DISTRICT OF FLORIDA
Division: 0
Receipt Number: FLS000006823
Cashier ID: mguerrer
Transaction Date: 06/17/2015
Payer Name: Vernon A Carey
------------------------------
TREASURY REGISTRY
 For: Will D Allen
 Case/Party: D-FLS-0-15-MJ-006264-001
 Amount:        $20,000.00
------------------------------
PAPER CHECK CONVERSION
 Check/Money Order Num: 1565003187
 Amt Tendered: $20,000.00
------------------------------
Total Due:      $20,000.00
Total Tendered: $20,000.00
Change Amt:     $0.00

15mj6264

10% Cash Bond

USA v Will D Allen

Remitter:
```

Vernon A Carey


Southwest Ranches, Fl    33330


Returned check fee $53


Checks and drafts are accepted
subject to collection and full
credit will only be given when the
check or draft has been accepted by
then financial institution on which
it was drawn.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-6264-SELTZER

UNITED STATES OF AMERICA

vs                              ORDER OF REMOVAL

WILL D. ALLEN

It appearing that in the **District of Massachusetts a Complaint** was filed against the above-named defendant , that the defendant was arrested in the Southern District of Florida and was given a hearing before a United States Magistrate Judge at Fort Lauderdale, Florida, which official committed the defendant for removal to the **District of Massachusetts.**

it is ORDERED AND ADJUDGED that the defendant be removed to the above-named district for trial on said charge.

And it further appearing that the defendant waived further hearing in the said removal proceedings and was held by the Magistrate Judge for removal and posted bail in the amount of $ 200,000 10% Personal/Corporate Surety Bond which was approved by the United States Magistrate Judge, and it is further ORDERED that the defendant shall appear in the aforesaid district at such times and places as may be ordered by that District Court, in accordance with the terms and conditions of aforesaid bail bond furnished by the defendant, and it is further

ORDERED that the funds, plus interest, which may have been deposited on behalf of this defendant with the Clerk of the Court under Bail Reform Act be transferred to the district where removed.

DONE AND ORDERED at Fort Lauderdale, Florida this 12TH day of JUNE, 2015.

BARRY S. SELTZER
U.S. MAGISTRATE JUDGE

cc:  Miami, Financial